*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*


# OPINION

No. 04-07-00372-CR

Tabitha Nicole **WOOD**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 63rd Judicial District Court, Val Verde County, Texas
Trial Court No. 10,434-CR
Honorable Thomas Franklin Lee, Judge Presiding

Opinion by:     Alma L. López, Chief Justice

Sitting:          Alma L. López, Chief Justice
                  Phylis J. Speedlin, Justice
                  Rebecca Simmons, Justice

Delivered and Filed:   August 13, 2008

REVERSED AND REMANDED

On the court's own motion, we withdraw our opinion and judgment dated July 2, 2008 and substitute this opinion and judgment.  Tabitha Nicole Wood was convicted of manslaughter and failure to stop and render aid after driving over the father of her child as he was attacking her.  She was sentenced to twenty years imprisonment and a $10,000 fine for the manslaughter conviction and five years imprisonment and a $5,000 fine for the failure to stop and render aid conviction, which will run concurrently.  Wood contends the trial court erred by overruling her objection to the

definition of "recklessly" and by denying her requested instructions on the defenses of necessity and self-defense. We reverse the portion of trial court's judgment adjudicating Wood guilty of manslaughter and remand the cause to the trial court for a new trial as to that offense.

## BACKGROUND

Wood lived with Michael McCoy and their 3-year old son. Wood and McCoy were never married, and McCoy had recently assaulted Wood when he found pictures of her with Martin Gutierrez. Two days after McCoy had been released from jail for failure to pay child support, Wood told McCoy she was going out "with the girls" but purposely failed to mention she was also meeting Gutierrez. After spending the evening together, Wood and Gutierrez returned to Wood's house in Gutierrez's truck which Wood was driving. They extinguished the headlights as they approached Wood's house and parked in front of a neighbor's house with the engine running. While Wood and Gutierrez were saying their goodbyes, McCoy ran to the driver's door from the rear of the truck, opened the door, grabbed Wood's arm, and tried to pull her from the truck. Wood put the car in gear and began to drive forward. McCoy did not release his grip on Wood or the truck and was subsequently run over by the truck's rear tire. Wood stopped the truck at a stop sign at the end of the street and immediately told Gutierrez she thought she had run over the attacker. Gutierrez told Wood he did not believe she had hit anyone. Wood and Gutierrez left the area and drove to the nearby home of Wood's boss. Wood told her boss's wife, Britney, she thought she had run over someone and asked Britney to go check on the victim. Wood and Britney drove back to the scene but departed when they saw emergency vehicles. Wood eventually called 911 and reported the attack. Although Wood was charged with murder, she was convicted of manslaughter and failure to stop and render aid, and she appeals her manslaughter conviction.

## STANDARD OF REVIEW

A defendant is entitled to an affirmative instruction on every defensive issue raised by the evidence regardless of the strength, weakness, or credibility of the evidence. *Hamel v. State*, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996); *Villarreal v. State*, 821 S.W.2d 682, 685 (Tex. App.—San Antonio 1991, no pet.). To be entitled to a defensive instruction, the defensive issue raised by the evidence must be one established by the penal code and applicable to the charged offense. *Willis v. State*, 790 S.W.2d 307, 314-15 (Tex. Crim. App. 1990). We review the evidence offered in support of a defensive issue in the light most favorable to the defense. *Pennington v. State*, 54 S.W.3d 852, 856 (Tex. App.—Fort Worth 2001, pet. ref'd). Even when the defendant does not testify, there may be enough evidence to warrant a charge on a defensive issue. *Smith v. State*, 676 S.W.2d 584, 585, 587 (Tex. Crim. App. 1984). "When evidence from any source raises a defensive issue, and the defendant properly requests a jury charge on that issue, the trial court must submit the issue to the jury." *Muniz v. State*, 851 S.W.2d 238, 254 (Tex. Crim. App. 1993). When analyzing charge error, we first determine if there is error in the charge, then we determine whether such error harmed the defendant to the extent that reversal is required. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on motion for reh'g). If there is error in the charge, and the defendant timely objected to the error, reversal is required if the error is "calculated to injure the rights of defendant," meaning there must be some harm to the defendant. *See* TEX. CODE CRIM. PROC. ANN. art. 36.19 (Vernon 2006); *Almanza*, 686 S.W.2d at 171. To determine the extent of the harm, we review the entire record assessing: the jury charge in its entirety; all of the evidence including the contested issues and the weight of the probative evidence; counsels' statements during voir dire and at trial; and any other pertinent information in the record. *Id.*

**DEFENSE OF NECESSITY**

The defense of necessity is available to justify criminal conduct if: (1) the defendant reasonably believes her conduct is immediately necessary to avoid imminent harm; (2) the desirability and urgency of avoiding the harm clearly outweighs the harm sought to be prevented by the law proscribing the conduct; and (3) no legislative purpose exists to exclude the defense. *See* TEX. PENAL CODE ANN. § 9.22 (Vernon 2003). We assess any justification based on necessity from the standpoint of the accused. *Leach v. State*, 726 S.W.2d 598, 600 (Tex. App.—Houston [14th Dist.] 1987, no pet.). A "reasonable belief" is a belief that an ordinary and prudent person would hold in the same circumstances as the defendant. TEX. PENAL CODE ANN. § 1.07(42) (Vernon Supp. 2007); *Brazelton v. State*, 947 S.W.2d 644, 648 (Tex. App.—Fort Worth 1997, no pet.). "Imminent harm" requires an emergency situation where a split-second decision is necessary to avoid that harm. *McGarity v. State*, 5 S.W.3d 223, 227 (Tex. App.—San Antonio 1999, no pet.). For the evidence to support submission of a necessity instruction to the jury, the defendant must admit to committing the offense. *Id.* Necessity, like self-defense, requires the defendant to present evidence that her commission of the offense was justified by other facts. *Maldonado v. State*, 902 S.W.2d 708, 712 (Tex. App.—El Paso 1995, no pet.). Because Texas Penal Code section 9.22 indicates "the defense of necessity may be applicable in every case unless specifically excluded by the legislature," we look to the plain language of the statute defining the charged offense to determine if the defense of necessity applies. *Bowen v. State*, 162 S.W.3d 226, 229 (Tex. Crim. App. 2005).

The jury was charged with finding Wood guilty of murder or, in the alternative, guilty of the lesser included offense of manslaughter, or not guilty. Murder is defined as intentionally or

knowingly[1] causing the death of another. TEX. PENAL CODE ANN. § 19.02 (Vernon 2003). Looking at the plain language of section 19.02, we do not perceive any legislative purpose indicating that the necessity defense is not available.[2]

When analyzing whether Wood was entitled to a charge on the defense of necessity, we must answer two questions. The first question is whether Wood believed her conduct was necessary to avoid imminent harm. Although Wood did not testify before the jury, the State introduced video-recordings of the sheriff's questioning of Wood, both from the night of the incident at her boss's house and from the following day at the sheriff's office. *See Smith*, 676 S.W.2d at 585, 587. Wood's attorney also cross-examined the State's witnesses concerning the incident and the State's subsequent questioning of Wood. *See id.* Wood contends the evidence before the jury showed that she had reason to fear her attacker, she had to make a split-second decision to avoid imminent harm, and she ran over the attacker when he "did not release his grip on [Wood] or the truck" resulting in his death. While there was conflicting evidence regarding whether or not Wood knew the attacker was McCoy, evidence established that the attacker ran up to the truck from behind, opened the driver's door, and grabbed Wood with enough force to leave an abrasion on Wood's arm and tear the stitching on Wood's shirt. Wood told Lieutenant Pope she was scared and panicked.

---

[1] Knowingly is further defined as acting with knowledge as to the result of one's conduct when one is aware that his conduct is reasonably certain to cause the result. TEX. PENAL CODE ANN. § 6.03 (Vernon 2003).

[2] Although the Texas Court of Criminal Appeals has not addressed the issue of whether the necessity defense is applicable to the offense of manslaughter, the State's contention that the defense is not available for the offense of manslaughter is raised for the first time in its Petition for Discretionary Review. In reviewing courts of appeals's opinions supporting the State's argument, we note that, in those cases, the jury was charged only on the offenses of manslaughter and criminally negligent homicide. *See Goodrich v. State*, 156 S.W.3d 141, 147 (Tex. App.—Dallas 2005, pet. ref'd); *Chavers v. State*, 991 S.W.2d 457, 459-460 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd). In the instant case, Wood was charged with murder *and* the lesser included offense of manslaughter. *See Dotson v. State*, 146 S.W.3d 285, 290-295 (Tex. App.—Fort Worth 2005, pet. ref'd); *Hubbard v. State*, 133 S.W.3d 797, 798-802 (Tex. App.—Texarkana 2004, pet. ref'd); *see also Andujo v. State*, No. 14-00-00693-CR, 2001 WL 777428, at *1-2 (Tex. App.—Houston [14th Dist.] July 12, 2001, pet. ref'd) (mem. op., not designated for publication) (indicating the necessity defense would have been available for a sole charge of manslaughter if the defendant had admitted the offense).

Furthermore, evidence established the road where Wood was parked was dark, desolate, and unable to be seen from the highway. There were few artificial lights, and there was no traffic on the road. The newspaper deliverer who discovered McCoy's body testified that he did not stop initially for fear that the person in the road was someone pretending to be hurt to facilitate a robbery. He further stated that he did not get out of his car until the emergency vehicles arrived because he was still afraid of being ambushed in that area.

Evidence also established McCoy had recently assaulted Wood when he found photographs of Wood and Gutierrrez together. Wood had reported the incident to the authorities who had prepared a protective order against McCoy. Because McCoy was incarcerated before Wood signed the order, Wood did not see the need to sign the order while McCoy was in jail. McCoy had only been released from jail for two days when the incident occurred. Furthermore, when McCoy tried to pull Wood out of the vehicle, Wood was with the person who had incited McCoy's last attack. Regardless of whether or not Wood knew the attacker was McCoy, there was sufficient evidence that Wood reasonably believed her conduct was necessary to avoid imminent harm.

Next, we must determine whether the desirability and urgency of avoiding the harm clearly outweighed the harm sought to be prevented by the law proscribing the conduct. At the time of the attack, Wood knew the attacker was attempting to forcibly pull her out of the truck into a dark and desolate street. There is evidence she did not know who her assailant was at the time of the attack and that the area was known to be frequented by "illegals" and "gangs." Gutierrez testified he "saw something dragging her out" and he "reached across [and] was trying to . . . hit him, shoo him off. I heard the grinding of teeth . . . ." Her decision to drive away was made as she was being attacked by either an unknown assailant or by her ex-boyfriend, who had previously attacked her because she

was photographed with Gutierrrez, with no time for reflection or a determination of whether the assailant was armed. The State presented no evidence that McCoy's actions were lawful or that McCoy did not intend to inflict serious bodily injury to Wood. In fact, the district attorney argued he would not blame a "spouse" for "beat[ing] the living daylight out of [an unfaithful partner]."[3] Moreover, the State's witness, who discovered McCoy's body, agreed that he would have driven off if someone had opened his door and tried to pull him from the car. Given the circumstances of the attack, Wood's decision to drive away and potentially endanger the assailant could have been reasonably more desirable than remaining and being pulled from the vehicle to be beaten, raped, kidnapped, or killed. By denying Wood's request for a necessity instruction, the trial judge denied the jury the opportunity to determine this issue. *See Hayes v. State*, 728 S.W.2d 804, 808 (Tex. Crim. App. 1987).

The State argues that even if there was sufficient evidence to support a necessity instruction, Wood was not entitled to the charge because she did not admit to the charged conduct. In support of this argument, the State asserts Wood pled not guilty and did not testify nor raise the defense in an affirmative manner. Even though Wood did not testify, there was enough evidence from other sources to warrant a charge on necessity. *See Smith*, 676 S.W.2d at 585, 587. The evidence established that Wood admitted she intended to drive away from the attacker and ran over the attacker in doing so. After running over McCoy, Wood immediately stopped the truck at the stop sign and told Gutierrez "oh, my [G]od, I think we ran him over, I think we ran him over." Wood told Britney that she hit Mike with the truck. Wood told Lieutenant Pope, "I think, whoever that was,

---

[3] We do not condone the prosecutor's statements that he would not blame a "spouse" for "beat[ing] the living daylight out of" an unfaithful partner or that "Tabitha Wood assumed that risk when she decided to go out with Martin Gutierrez." Statements made by a prosecutor encouraging or endorsing violence against women are encouraging or endorsing criminal acts, and such statements should not be tolerated by opposing counsel or the district court.

I ran them over . . . I felt it." Wood also told Lieutenant Pope that after seeing the ambulances she knew "I had to have done something." When evidence from any source raises a defensive issue, the defendant may properly request a jury charge on that issue, and the trial court must submit the issue to the jury. *Muniz*, 851 S.W.2d at 254. Because Wood's admission that she ran over the attacker while trying to flee from the attack was sufficient to warrant a charge on necessity, and she requested such a charge on necessity, the trial court erred by refusing to give the requested instruction to the jury. *See Darty v. State*, 994 S.W.2d 215, 220 (Tex. App.—San Antonio 1999, pet. ref'd).

"An erroneous or incomplete jury charge, however, does not result in automatic reversal of a conviction." *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). Because Wood requested an instruction on necessity and thereby preserved error, she is entitled to a reversal if we determine the incomplete jury charge resulted in some harm to Wood. *See Almanza*, 686 S.W.2d at 171. In evaluating the extent of the harm, we review the entire record assessing: the jury charge in its entirety; all of the evidence including the contested issues and the weight of the probative evidence; counsels' statements during voir dire and at trial; and any other pertinent information in the record. *Id.* Because Wood admitted she intentionally drove away with McCoy clinging to the truck and ran over him, and the jury was not instructed to consider any affirmative defense, the jury had no choice but to convict Wood of murder or of the lesser included offense of manslaughter. *See Darty*, 994 S.W.2d at 220. The jury was not given the opportunity to consider acquitting Wood by reason of necessity. Therefore, there is evidence of some harm to Wood calculated to injure her rights by the omission of the necessity instruction. *See id.* Wood's first issue is sustained.

## SELF-DEFENSE

Wood contends the trial court erred by failing to include Wood's requested jury instruction regarding the law of self-defense. Wood requested an instruction on the use of non-deadly force in self-defense based on section 9.31 of the Texas Penal Code. *See* TEX. PENAL CODE ANN. § 9.31 (Vernon Supp. 2007). Because McCoy died as a result of the injuries sustained when Wood ran over him, Wood used deadly force by definition. *See Ferrel v. State*, 55 S.W.3d 586, 592 (Tex. Crim. App. 2001). Wood was not, therefore, entitled to an instruction on self-defense using non-deadly force. *See id.* Wood's second issue is overruled.

## DEFINITION OF RECKLESSLY

Wood also argues the trial court erred by giving an overly broad definition of the scienter element of "recklessly." The Texas Penal Code defines its culpable mental states in terms of the conduct elements that may be involved in an offense: (1) the nature of the conduct; (2) the result of the conduct; and (3) the circumstances surrounding the conduct. TEX. PENAL CODE ANN. § 6.03 (Vernon 2003). Manslaughter is a "result of the conduct" offense. *Schroeder v. State*, 123 S.W.3d 398, 399 (Tex. Crim. App. 2003). A person commits manslaughter if he recklessly causes another's death. *Id.* at 400-01. The court defined "recklessly" for the jury as follows:

> A person acts recklessly, or is reckless, with respect to *circumstances surrounding her conduct* or the result of her conduct when she is aware of but consciously disregards a substantial and unjustifiable risk that *the circumstances exist* or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

(emphasis added). Wood argues this definition of "recklessly" failed to limit the culpable mental state to the result of Wood's conduct. *See id.* at 400. We agree.

Because Wood objected to the trial court's definition of "recklessly" and thereby preserved error, we must reverse if we determine the incorrect definition resulted in some harm to Wood. *See Almanza*, 686 S.W.2d at 171. "Definitions in the charge must be examined in the context in which the defined term appears, and cannot be limited to portions of the charge standing alone." *Turner v. State*, 805 S.W.2d 423, 430 (Tex. Crim. App. 1991). Here, the court charged the jury as follows:

> If you find from the evidence beyond a reasonable doubt that on or about the 20th day of November, 2004, in Val Verde County, Texas, the Defendant, Tabitha Nicole Wood, did then and there recklessly cause the death of . . . Michael McCoy, III by driving over . . . Michael McCoy, III while Tabitha Nicole Wood was operating a motor vehicle, then you will find the Defendant guilty of manslaughter, as charged in Count 2 in the indictment.

In applying the law to the facts, the trial judge limited the definition of "recklessly" to the result of the conduct, i.e. the death of McCoy. The jury was asked to decide if Wood recklessly caused McCoy's death by driving over him. Wood's conduct of driving over McCoy without causing McCoy's death would not have been sufficient to convict Wood under the charge given because the result of the reckless conduct would not have been the death of McCoy. *See id.* at 431. No harm resulted, therefore, from the definition of "recklessly" supplied by the court. *See id.* Wood's third issue is overruled.

## CONCLUSION

Because the trial court erred when it refused to instruct the jury on the defense of necessity thereby harming Wood, we reverse the trial court's judgment regarding Wood's manslaughter conviction and remand the cause to the trial court for a new trial as to that offense.

Alma L. López, Chief Justice

Publish