In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-09-00095-CR


______________________________




HOWARD WEATHERALL, JR., Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 354th Judicial District Court


 Hunt County, Texas


Trial Court No. 25249




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 Howard Weatherall, Jr., a man with a felony record, was at a Commerce nightclub owned
by brothers James and Orvis Reynolds when words were exchanged about Weatherall having been
stabbed in the eye by his girlfriend. Weatherall argued with the two brothers, but the argument
appeared to have ended when Weatherall and Orvis both left the scene. Unfortunately, Weatherall
returned with a gun. Weatherall shot James multiple times. Some evidence suggested that James
had a gun, that Weatherall may have been shot in the encounter, and that Weatherall may have been
moving away from James as he shot James.

 A Hunt County jury found Weatherall guilty of aggravated assault with a deadly weapon. (1) 
After Weatherall pled true to several previous felony convictions, his sentence was enhanced, and
the trial court imposed forty years' imprisonment in the Texas Department of Criminal
Justice--Institutional Division. On appeal, Weatherall argues that the trial court erred in failing to
submit the issue of self-defense to the jury and that Weatherall's counsel was ineffective in failing
to request a jury instruction on the defense of necessity. We affirm the trial court's judgment because
(1) Weatherall was not entitled to a self-defense instruction and (2) ineffective assistance of counsel
has not been shown.



(1) Weatherall Was Not Entitled to a Self-Defense Instruction

 After Weatherall was stabbed in the eye by his girlfriend, he appeared at the Reynolds
nightclub. As Weatherall chatted with a group of people gathered outside the club and relayed the
incident involving his girlfriend, some started teasing Weatherall. (2) That led to an expletive-filled
argument between Orvis and Weatherall. At some point, Weatherall saw Orvis flash a gun. 
Weatherall got in his car, drove across the street, allegedly borrowed a pistol from a stranger, and
drove back to the club with his lights off because he was threatened. Orvis was not present when
Weatherall arrived.

 Two versions of the events that followed were presented to the jury. James testified he began
to run when Weatherall got out of the car because he was worried Weatherall would shoot him in
the back. Weatherall assured James by stating, "that's not for me and you, man," but then started
firing. James fell to the ground and watched as Weatherall shot down at him. He suffered seven
gunshot wounds. Five shell casings, all from the same manufacturer, were located on the street. 

 Weatherall testified he was trying to work out his differences with James when things "went
bizarre." "James started talking crazy, and we argued." He asked James to take his hand out of his
pocket. Weatherall claims James brandished a pistol and the shooting started. James admitted to
carrying a gun to provide security for the nightclub, but denied shooting Weatherall. Weatherall had
a leg wound when he was arrested sixteen days after the incident. Police investigated an earlier case
where Weatherall was shot, but they could not verify the date of his leg injury. 

 From this evidence, Weatherall claims he was entitled to a jury instruction on self-defense.

 We review de novo the issue of whether Weatherall was entitled to a self-defense instruction. 
See Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Regardless of whether the above
evidence might authorize a self-defense instruction (3) in other cases, "no error is shown in the denial
of a defensive instruction if the evidence establishes as a matter of law that the defendant is not
entitled to rely on this defense." Johnson v. State, 157 S.W.3d 48, 50 (Tex. App.--Waco 2004, no
pet.); see Dyson, 672 S.W.2d at 463. Here, Weatherall was not so entitled.

 The self-defense statute expressly provides that the use of force is not justified when an actor
seeks an explanation from, or discussion with, another person concerning the actor's differences with
that other person while carrying a weapon in violation of Section 46.02 of the Texas Penal Code. 
Tex. Penal Code Ann. § 9.31(b)(5)(A) (Vernon Supp. 2009). Section 46.02 states a "person
commits an offense if the person intentionally, knowingly, or recklessly carries on or about his or
her person a handgun . . . if the person is not: (1) on the person's own premises or premises under
the person's control; or (2) inside of or directly en route to a motor vehicle that is owned by the
person or under the person's control." Tex. Penal Code Ann. § 46.02(a) (Vernon Supp. 2009). 
Weatherall's actions fit squarely within Section 46.02(a), thus making self-defense unavailable as
a matter of law.

 This exception to the justification was discussed in the analogous case of Williams v. State, 
35 S.W.3d 783 (Tex. App.--Beaumont 2001, pet. ref'd). In Williams, it was undisputed the
defendant told the victim he "wanted to talk to him" about spanking his son with a belt and followed
him to a residence. Id. at 784, 786. Once there, Williams stopped his vehicle, pulled a handgun
from under the seat, stuck it in his pants as he exited the car, and walked into the yard of the
residence. Id. at 784. He began hitting the victim with his belt. Id. During the melee, a struggle
for the gun ensued, and the victim was shot. Id. at 785. Because the record showed that Williams
intentionally sought out the victim to confront him about the spanking incident and that he
intentionally brought the handgun with him which he used to shoot the victim, the trial court
concluded Williams was not entitled to the self-defense instruction as a matter of law. Id. at
786-87. (4)

 Here, too, because Weatherall testified he intentionally sought out James to work out their
differences, and intentionally brought the gun with him which he used to shoot James, he was not
entitled to the self-defense instruction as a matter of law. We overrule this point of error.

(2) Ineffective Assistance of Counsel Has Not Been Shown

 Weatherall also claims that his counsel was ineffective because he did not request an
instruction on necessity.

 Ineffective assistance of counsel must be firmly founded in the record. Goodspeed v. State,
187 S.W.3d 390, 392 (Tex. Crim. App. 2005); Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim.
App. 1999); Wallace v. State, 75 S.W.3d 576, 589 (Tex. App.--Texarkana 2002), aff'd, 106 S.W.3d
103 (Tex. Crim. App. 2003). Ineffective assistance of counsel must be established by a
preponderance of the evidence. Goodspeed, 187 S.W.3d at 392; Thompson, 9 S.W.3d at 813;
Cannon v. State, 668 S.W.2d 401, 403 (Tex. Crim. App. 1984).

 We apply the two-pronged Strickland test handed down by the United States Supreme Court
to determine whether Weatherall received ineffective assistance of counsel. Strickland v.
Washington,  466  U.S.  668  (1984).  Failure  to  satisfy  either  prong  of  the  Strickland  test  is
fatal. Ex parte Martinez, 195 S.W.3d 713, 730 (Tex. Crim. App. 2006). 

 First, Weatherall must show counsel's performance fell below an objective standard of
reasonableness when considering prevailing professional norms. Strickland, 466 U.S. at 687-88. 
There is a strong presumption that counsel's conduct fell within the wide range of reasonable
professional assistance and that the challenged action could be considered sound trial strategy. 
Strickland, 466 U.S. at 689; Ex parte White, 160 S.W.3d 46, 51 (Tex. Crim. App. 2004); Tong v.
State, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). To meet the second prong of the Strickland test,
Weatherall must show that the alleged deficient performance damaged his defense such that there
is a reasonable probability that the result of the trial would have been different. Strickland, 466 U.S.
at 689; Tong, 25 S.W.3d at 712. A reasonable probability "is one sufficient to undermine confidence
in the outcome." Mitchell v. State, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002).

 By definition, Weatherall's counsel could not be labeled deficient for not requesting a
necessity instruction if Weatherall would not have been entitled to such an instruction under the facts
of this case. We hold that he was not so entitled.

 The  defense  of  necessity  would  be  available  to  Weatherall  if  the  evidence
demonstrated: (1) he reasonably believed his conduct was immediately necessary to avoid imminent
harm; (2) the desirability and urgency of avoiding the harm clearly outweighed, according to ordinary
standards of reasonableness, the harm sought to be prevented; and (3) no legislative purpose existed
to exclude the defense. Tex. Penal Code Ann. § 9.22 (Vernon 2003). We review the evidence
offered in support of the necessity defense in the light most favorable to Weatherall and assess any
justification based on necessity from his standpoint. Wood v. State, 271 S.W.3d 329, 333 (Tex.
App.--San Antonio 2008, pet. ref'd). 

 Weatherall claims the benefit of guidance from the Texas Court of Criminal Appeals:

The legislature has not excluded the justification of necessity as a defense to the
offense of possession of a firearm by a felon. Nor has it legislatively been excluded
as a defense when an offense is enhanced. Indeed, this Court has held that necessity
is a defense available to a defendant charged with the lesser included offense of
unlawfully carrying a weapon.


Vasquez v. State, 830 S.W.2d 948, 950 (Tex. Crim. App. 1992) (citations omitted). Vasquez
specifically found counsel's performance deficient for failing to request the necessity defense since
it was "specifically recognized by the legislature in the Penal Code" and the defendant's "testimony
sufficiently raised the necessity defense." Id. at 951. The high court stated, 

Because the evidence did raise the defensive issue of necessity, and because
appellant's counsel failed to request a jury instruction on the issue, the jury was
precluded from giving effect to appellant's defense. That in itself undermines our
confidence in the conviction sufficiently to convince us that the result of the trial
might have been different had the instruction been requested and given.


Id. If his case were like Vasquez, Weatherall's claim would have traction. But there are at least
two distinctions to be drawn. A few years after Vasquez, the Texas Court of Criminal Appeals reminded courts that "in
order to raise necessity, a defendant admits violating the statute under which he is charged and then
offers necessity as a justification which weighs against imposing a criminal punishment for the act
or acts which violated the statute." Young v. State, 991 S.W.2d 835, 838 (Tex. Crim. App. 1999)
(holding necessity defense barred because Young did not admit intent element of attempted murder). 
According to Young, this case is distinguished by one fact. In Vasquez, the defendant admitted to
the crime committed. Id. While trial counsel claimed Weatherall acted reasonably, based on
Weatherall's own testimony, and that shooting James was necessary to save his life, "such an
argument does not present the defense of necessity." Id. at 839. To raise necessity, Weatherall was
required to admit that he committed aggravated assault. Instead, Weatherall claimed he did not have
the requisite intent. Thus, he did not admit to the crime and was not entitled to a jury instruction on
the defense of necessity. Id.; Shaw v. State, 243 S.W.3d 647, 659 (Tex. Crim. App. 2007). (5)

 Further, the evidence demonstrated that Weatherall left the scene, got a gun, and came back,
ultimately shooting James. There was nothing preventing Weatherall from driving away. At the
moment Weatherall drove away from the scene to obtain a gun, the evidence cannot demonstrate that
Weatherall was in fear of immediate danger as opposed to a theoretical threat.

 Because Weatherall was not entitled to a jury instruction on necessity, he has not shown that
counsel's performance in failing to request an instruction was deficient under the first part of the
Strickland test. Young, 991 S.W.2d at 839. Under the facts of this case, there was no error.

 We affirm the trial court's judgment.




 Josh R. Morriss, III

 Chief Justice


Date Submitted: October 5, 2009

Date Decided: October 20, 2009


Do Not Publish
1. In a companion case--our cause number 06-09-00114-CR--Weatherall was also found
guilty of unlawful possession of a firearm. 
2. Orvis claimed he told Weatherall he needed to leave the girlfriend alone. 
3. Undoubtedly, Weatherall used deadly force against James. Under Section 9.32 of the Texas
Penal Code, a person's use of deadly force is justified if "he would be justified in using force against
the other under Section 9.31." Tex. Penal Code Ann. § 9.32(a) (Vernon Supp. 2009). Under
Section 9.31 of the Texas Penal Code, "a person is justified in using force against another when and
to the degree he reasonably believes the force is immediately necessary to protect himself against the
other's use or attempted use of unlawful force." Tex. Penal Code Ann. § 9.31(a) (Vernon Supp.
2009). In raising the justification of self-defense, a defendant bears the burden of production of
some evidence that he or she reasonably believed use of deadly force was immediately necessary to
protect himself or herself against the victim's use or attempted use of unlawful force. Zuliani v.
State, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); Saxton v. State, 804 S.W.2d 910, 913 (Tex.
Crim. App. 1991); Dyson v. State, 672 S.W.2d 460, 463 (Tex. Crim. App. 1984). "The defendant's
testimony alone may be sufficient to raise a defensive theory requiring a charge." Dyson, 672
S.W.2d at 463.


 Weatherall testified he was in fear of his life when he went back to the club and confronted
James.  He  had  seen  James  "slapping  people  with  his  pistol,  pulling  pistol,  threatening 
people . . . [and] tortur[ing] people" by pulling their fingernails out. An investigator testified "that
the shooter was possibly in a retreat mode while he was shooting the weapon due to the fact that it--the shell casings were as if they were going towards the street." Investigators noticed a large pool
of blood, likely where James fell, and also blood across the street, about nine or ten feet from the
nightclub curb. 


 This testimony may be sufficient to raise the issue of self-defense in the proper case. Where
a defensive issue is raised by the evidence, a defendant is entitled to an affirmative instruction in the
jury charge, regardless of the strength, weakness, or credibility of the evidence. Hamel v. State, 916
S.W.2d 491, 493 (Tex. Crim. App. 1996).
4. As in Williams, Weatherall argued that the proper treatment of Section 9.31(b)(5) of the
Texas Penal Code is as a limiting instruction on a self-defense charge, not as an outright bar to a
self-defense charge. Williams, 35 S.W.3d at 785. Thus, he claims the trial court erred in instructing
the jury on the self-defense issue with a limiting instruction. Williams noted that while courts
normally treat the Section 9.31(b) list as a limitation on self-defense, "when the evidence establishes
as a matter of law that force is not justified in self-defense . . . then no self-defense issue [and thus
limitation] is required." Id. 
5. The Texas Court of Criminal Appeals has stated


 with respect to defenses such as necessity and self defense that when the defensive
evidence merely negates the necessary culpable mental state, it will not suffice to
entitle the defendant to a defensive instruction. Rather, a defensive instruction is
only appropriate when the defendant's defensive evidence essentially admits to every
element of the offense including the culpable mental state, but interposes justification
to excuse the otherwise criminal conduct.


Shaw, 243 S.W.3d at 659. 

 





circumstances surrounding his conduct or the result of his conduct when he ought to
be aware of a substantial and unjustifiable risk that the circumstances exist or the
result will occur. The risk must be of such a nature and degree that the failure to
perceive it constitutes a gross deviation from the standard of care that an ordinary
person would exercise under all the circumstances as viewed from the actor's
standpoint.


Tex. Penal Code Ann. § 6.03(d) (Vernon 2003).


 "Bodily injury" means "physical pain, illness, or any impairment of physical condition." Tex.
Penal Code Ann. § 1.07(a)(8) (Vernon Supp. 2006).

 Unfortunately, methamphetamine use has become widespread in our society and many of the
hazards associated with the exposure to methamphetamine have become common knowledge. A
jury could rationally find from this collection of facts that Stotts should have, but failed, to perceive
a substantial and unjustifiable risk of bodily injury to S.C.F. (who was often in his presence) from
his conduct of knowingly using methamphetamine in such a way that the child could be exposed to
it. A jury could also rationally find that his failure to perceive this substantial and unjustifiable risk
of bodily injury to S.C.F. arising from this conduct was clearly a gross deviation from the standard
of care that an ordinary person would exercise under the circumstances. These findings are sufficient
to meet the definition of "criminal negligence" in Section 6.03(d). See Tello v. State, 180 S.W.3d
150, 156 (Tex. Crim. App. 2005) The evidence is neither so weak nor so overbalanced by
controverting testimony to be insufficient--either legally or factually--to sustain the conviction.

 We affirm the judgment.



 Bailey C. Moseley

 Justice


Date Submitted: September 25, 2007

Date Decided: October 25, 2007


Do Not Publish
1. At the time of the incident, S.C.F. was about sixteen months old.
2. We note that Stotts has raised this issue as part of his first point of error concerning the trial
court's failure to give the accomplice-witness instruction. The issues of whether a trial court errs by
failing to give a jury instruction and whether the evidence is sufficient to corroborate an accomplice's
testimony are separate issues, which should be briefed separately. When an attorney writes a brief
that combines two or more issues that should be raised and addressed separately, that attorney risks
this Court overruling the combination issue for multifariousness. See, e.g., In re Guardianship of
Moon, 216 S.W.3d 506, 508 (Tex. App.--Texarkana 2007, no pet.); Woodall v. State, 216 S.W.3d
530, 533 n.3 (Tex. App.--Texarkana 2007, pet. filed); Dickey v. State, 189 S.W.3d 339, 341 (Tex.
App.--Texarkana 2006, no pet.); Newby v. State, 169 S.W.3d 413, 414 (Tex. App.--Texarkana
2005, no pet.).