**Opinion filed April 11, 2013**



In The

# Eleventh Court of Appeals

_____

## Nos. 11-11-00084-CR, 11-11-00085-CR, & 11-11-00086-CR

_____

## ISAIAS LUJAN PALACIOS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

### On Appeal from the 142nd District Court

### Midland County, Texas

### Trial Court Cause Nos. CR36475, CR36477, & CR36479

## MEMORANDUM OPINION

The grand jury indicted Isaias Lujan Palacios on four counts of aggravated assault with a deadly weapon and one count of evading arrest and detention in a motor vehicle. The jury found him guilty of two of the four counts of aggravated assault with a deadly weapon and guilty of evading arrest and detention in a motor vehicle. Palacios pleaded true to the enhancement paragraph in each of the aggravated assault cases, and the trial court found the enhancement paragraphs to be true. The trial court assessed his punishment for each count of aggravated assault at twenty years confinement in the Institutional Division of the Texas Department of

Criminal Justice and assessed his punishment for evading arrest and detention at two years confinement in the State Jail Division. In addition, the trial court ordered Palacios to pay restitution to one of the victims in an amount not to exceed $14,000 and ordered him to pay restitution to the other victim in an amount not to exceed $21,000. The trial court sentenced him accordingly and ordered his sentences to run concurrently. We affirm.

In a single issue in each case, Palacios argues that the trial court erred when it denied his request to instruct the jury on his defenses of self-defense, necessity, and duress. When the evidence at trial raises a defensive issue, and the defendant properly requests a jury instruction on that issue, the trial court must submit the issue to the jury. *Booth v. State*, 679 S.W.2d 498, 500 (Tex. Crim. App. 1984). "[A] defense is supported (or raised) by the evidence if there is some evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that that element is true." *Shaw v. State*, 243 S.W.3d 647, 657–58 (Tex. Crim. App. 2007).

The doctrine of confession and avoidance applies to the defenses of self-defense, necessity, and duress. *Juarez v. State*, 308 S.W.3d 398, 399 (Tex. Crim. App. 2010) (necessity); *Ex parte Nailor*, 149 S.W.3d 125, 132–34 (Tex. Crim. App. 2004) (self-defense); *Gomez v. State*, 380 S.W.3d 830, 834 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd) (duress). Thus, to be entitled to an instruction on any one of these defensive issues, Palacios must have admitted to the conduct through his own testimony or through statements he made to other individuals. *See Wood v. State*, 271 S.W.3d 329, 335–36 (Tex. App.—San Antonio 2008, pet. ref'd) (holding the evidence showed, even when defendant did not testify, that defendant admitted to the charged conduct when the testimony of several witnesses indicated that she intended her conduct).

The evidence at trial showed that Palacios went to Riley's Bar & Grill in Midland with his common-law wife and mother-in-law on Memorial Day. Several patrons testified that Palacios pushed his mother-in-law off her bar stool and laughed at her. Jaime Mendez, one of the patrons, went over to help her up, and Palacios became offended. He rushed at Mendez, started swinging, and threw a punch at him. Palacios was escorted out of the bar. A few minutes later, Palacios came back into the bar and threw a cement block. The cement block hit a pool table, bounced off, and hit a bartender and another patron.[1]

---

[1]The jury acquitted Palacios for the aggravated assault charges in relation to the cement block.

Palacios was again escorted out of the bar, and a fight broke out between him and several male patrons. At one point, the men held Palacios down and kicked him all over his body. Steven Taft, one of the patrons involved, testified that he also ended up on the ground and was hit and kicked. The men finally let Palacios up, and he walked to his Lincoln Navigator. No one chased him to his vehicle.

Palacios revved his engine and "floor[ed] it" toward the front entrance of Riley's. Sandra Payan's left hand was struck by the vehicle, and she fell to the ground. Palacios drove his vehicle into a white pickup and pinned Diane Tersero in between his vehicle and the pickup. She was pinned from the waist down and could not move until Palacios backed up.

As Palacios made his way out of the parking lot, Sergeant Richard Lewis of the Midland Police Department arrived in response to a report of the disturbance. Sergeant Lewis observed Palacios as Palacios tried to leave the parking lot in a maroon Lincoln Navigator; people in the lot were pointing at the vehicle. Sergeant Lewis signaled for Palacios to back up because he was blocking his entrance into the parking lot. Palacios did not back up or pull over. Instead, he pulled out of the parking lot, started driving, and accelerated away from Sergeant Lewis. Sergeant Lewis activated his lights and followed Palacios, who still did not pull over. Sergeant Lewis activated his siren and continued to follow Palacios. Palacios eventually pulled into his sister's yard and stopped up against the fence.

Palacios's mother-in-law testified that Palacios did not hit, shove, or push her off her bar stool or make her fall to the ground. She testified that Palacios kept messing with her hair and that they were joking around and harassing each other in a playful manner. Neither of them were cursing, using angry words, or yelling at the other. The initial altercation began when Mendez "blind-sided [Palacios] from the back." Two other men joined Mendez and hit and kicked Palacios all over his body. The men drug Palacios outside. When he tried to come back inside, he threw a concrete block onto the pool table; he appeared to be defending himself. Palacios was not the aggressor; "[h]e was trying to save his life." The men "jerked him back outside." Palacios's mother-in-law also testified that she did not see anything that happened outside.

Palacios's wife, Shanna Renee Parker, did not see how the initial altercation started because she had left Riley's to get cash. When she pulled back into the parking lot from getting the cash, she saw three men, including Mendez, grab Palacios by his clothes and swing him like a baby out the front door of Riley's. He landed face-first on the ground. She put the Navigator

in park and ran to the front door to help him. The three men followed him outside and hit and kicked him. Palacios stood up and ran to the Navigator. Two other men shoved Palacios to the ground and started hitting and kicking him all over. He was kicked in the face and the head repeatedly. Parker jumped in the middle of the fight and tried to pull the two men off him. He could not stand up straight and was "wobbly." Parker said that Palacios was defending himself the whole time; she never saw him be the aggressor.

Parker was thrown to the ground and also suffered injuries. Parker and Palacios were finally able to get into their vehicle, and Palacios tried to drive out of the parking lot. He was going backward and forward trying to maneuver his way out; Parker had parked the vehicle in an unusual manner. Parker testified that she feared for both their lives. Once she noticed that the police were behind them, she told Palacios repeatedly that he needed to pull over. He was not responding to her. She finally got his attention, and they ended up in his sister's front yard. Palacios never put the vehicle in park, and when he tried to get out of the vehicle, he fell to the ground.

We will first review the evidence to determine whether Palacios admitted to the charged conduct. Palacios did not testify at trial. The only statement that Palacios made to police was when Sergeant Lewis was finally able to make contact with him. Palacios told Sergeant Lewis, "They beat me up. They beat me up." Sergeant Lewis acknowledged that Palacios had several marks on his face and chest. This statement, however, is not an admission by Palacios that he assaulted two women with his vehicle or that he evaded arrest. In addition, neither of his defense witnesses saw him hit Tersero or Payan. And, while his wife was in the vehicle with him when Sergeant Lewis tried to pull him over, she testified that she continued to try to get him to pull over, but he was not responding to anything she was saying. She testified that he had been kicked in the head multiple times and "wasn't there." Therefore, Palacios did not admit to aggravated assault or evading arrest and was not entitled to an instruction on any of the requested defenses.

Even if Palacios had admitted to assaulting the women with his vehicle or to evading arrest, the evidence does not support a jury instruction on self-defense, necessity, or duress. As to self-defense, the Texas Penal Code provides that "a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." TEX. PENAL

4

CODE ANN. § 9.31(a) (West 2011). "[A] defendant is entitled to a charge on the right of self-defense against multiple assailants if 'there is evidence, viewed from the accused's standpoint, that he was in danger of an unlawful attack or a threatened attack at the hands of more than one assailant.'" *Frank v. State*, 688 S.W.2d 863, 868 (Tex. Crim. App. 1985) (quoting *Wilson v. State*, 145 S.W.2d 890, 893 (Tex. Crim. App. 1940)).

The State argues that the evidence did not show that Tersero or Payan took any aggressive action against Palacios and, thus, that Palacios was not entitled to a self-defense instruction. We agree. Under Section 9.31(a), Palacios would be justified in using force against Tersero and Payan only if he reasonably believed that the force was immediately necessary to protect himself against Tersero and Payan. While Palacios presented evidence that several men at the bar used unlawful force against him, he did not present any evidence that Tersero or Payan used or attempted to use unlawful force against him. In addition, defense counsel acknowledged in his closing argument that Palacios did not have to defend himself against the women:

> Now, I never heard any evidence that these four females, these women, did anything to Mr. Palacios. You heard from Ms. Parker and Ms. Parker, mother and daughter, and nobody said that these women did anything to Mr. Palacios. There is not a self-defense in here because they didn't do anything to him. He didn't have to defend himself against them.

Therefore, there was no evidence that would support a rational inference that Palacios acted in self-defense when he assaulted Tersero and Payan with his Lincoln Navigator.

Palacios also failed to present any evidence that Sergeant Lewis used or attempted to use any unlawful force against him when Sergeant Lewis attempted to pull him over; thus, there was no evidence that Palacios acted in self-defense when he evaded arrest. The trial court did not err when it denied Palacios's request to instruct the jury on self-defense on the aggravated assault charges or on the evading arrest charge.

We will next address the defensive issue of necessity. The Texas Penal Code provides that a person's conduct is justified if (1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm, (2) the desirability and urgency of avoiding harm clearly outweighs the harm sought to be prevented, and (3) a legislative purpose to exclude the justification for the conduct does not otherwise plainly appear. TEX. PENAL CODE ANN. § 9.22 (West 2011).

While Palacios may have reasonably believed that getting into his car and immediately leaving the scene were acts necessary to avoid any further injuries from other patrons at the bar, there is no evidence that Palacios reasonably believed that it was necessary to assault Tersero and Payan with his vehicle in order to avoid imminent harm. Parker testified that Palacios had access to at least one of the exits in the parking lot. Palacios did not present any evidence to suggest that it was necessary for him to drive toward the entrance of Riley's, instead of toward the exit, in order to escape.

In addition, Palacios failed to present any evidence that it was necessary for him to evade Sergeant Lewis to avoid harm. Sergeant Lewis testified that Palacios could have pulled his vehicle over in several safe locations after pulling out of Riley's parking lot. Once Palacios pulled over, Sergeant Lewis could have protected him. The only evidence that Palacios presented as to why he did not pull over was his wife's testimony that he was incoherent and did not realize that the officer was behind him. This evidence does not support a necessity instruction. Thus, the trial court did not err when it denied the requested instruction.

The affirmative defense of duress requires the actor to have engaged in the conduct because he was compelled to do so by threat of imminent death or serious bodily injury to himself or another. TEX. PENAL CODE ANN. § 8.05(a) (West 2011). Compulsion "exists only if the force or threat of force would render a person of reasonable firmness incapable of resisting the pressure." *Id.* § 8.05(c). While Palacios's wife and mother-in-law testified that he was the victim throughout the incident at Riley's and his wife testified she was scared for her life and for his, there was no evidence that he would suffer imminent death or serious bodily injury if he did not assault Tersero and Payan with his vehicle or did not evade Sergeant Lewis. Therefore, the trial court did not err when it denied his request to instruct the jury on duress. We overrule Palacios's sole issue on appeal in each case.

We affirm the trial court's judgments.

April 11, 2013                                             JIM R. WRIGHT

Do not publish. *See* TEX. R. APP. P. 47.2(b).          CHIEF JUSTICE

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.

6