**Opinion filed September 30, 2014**



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00270-CR

_____

## MARTIN QUIROZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

### On Appeal from the 385th District Court

### Midland County, Texas

### Trial Court Cause No. CR38816

### M E M O R A N D U M   O P I N I O N

The jury convicted Martin Quiroz of the offense of assault on a public servant and assessed punishment at confinement for four years and a $1,500 fine. The trial court sentenced him accordingly. Because the judgment reflects the incorrect penal code provision under which the jury convicted Appellant, we

modify the judgment to reflect the correct penal code provision and affirm as modified.

In two issues on appeal, Appellant challenges the sufficiency of the evidence and the admissibility of rebuttal testimony.

Appellant suffered from bipolar disorder and took medication as a result. When his work schedule required him to work nights, Appellant took his medication in the morning because it made him drowsy at work. But when he took the medication in the morning, it caused him to have a lot of energy, and he did not sleep or eat.

Elia Briseno, Appellant's fiancée, had been staying awake to take care of Appellant, and she was "exhausted." She had taken Appellant to the hospital earlier in the day, but because he was an adult and refused treatment, he was given only Benadryl to help him sleep.

Briseno wanted Appellant to be taken to a hospital for a mental evaluation, and she contacted law enforcement personnel. Officers from Midland Police Department were dispatched to Appellant's house. When Officer Bradley Alexander arrived, he spoke to Appellant's father in front of the residence and then followed him inside. Appellant and his brother, Jesus Quiroz, were in the dining area of a large room that also included the kitchen and living room. Appellant was using a "large butcher knife" to carve a new hole in his belt. Officer Alexander drew his weapon and gave repeated verbal commands for Appellant to "drop the knife." Although Appellant testified that he immediately dropped the knife, Officer Alexander testified that Jesus took the knife from Appellant and placed it on a nearby counter. Officer Alexander detained Jesus for officer safety. He holstered his weapon and was putting handcuffs on Jesus when several other family members came into the room. Officer Alexander ordered everyone into the living room area.

2

At some point after he arrived, Officer Alexander used his radio to advise Officer Demetrius Lee to "step it up." Officer Lee understood this to mean that Officer Alexander needed assistance as soon as possible. When Officer Lee entered the residence, Officer Alexander and Jesus were in the kitchen, and everyone else was in the living room. Appellant was sitting on the couch and was upset that the officers were present and that they were detaining his brother. Appellant began calling Officer Lee a "nigger" and referring to both officers as "f-----g pigs." When Briseno told Officer Lee that Appellant had another knife in a sheath on his hip, Officer Lee asked Appellant to "roll over onto his stomach and to place his hands behind his back." Appellant complied and placed his right hand behind his back. When Officer Lee placed a handcuff on Appellant's right hand, Appellant began to resist. Appellant used his free hand to push Officer Lee's hand away, and he put that free hand underneath his body.

When Officer Alexander saw Officer Lee wrestling with Appellant, he rushed over, straddled Appellant's back, reached under his left armpit, and secured Appellant's left wrist while Officer Lee maintained control of Appellant's cuffed right hand. As Officer Alexander was struggling with Appellant, he saw Appellant move his right arm toward "a very large, fixed-blade knife in a sheath on [Appellant's] right hip." Officer Alexander sprayed a short burst of pepper spray into Appellant's face. Instead of encouraging compliance, the pepper spray appeared to "further enrage" Appellant.

As Officer Alexander continued to try to pull Appellant's left wrist behind his back, he saw Appellant open his mouth and bite Officer Alexander's left forearm. Appellant did not release his bite, and Officer Alexander began punching Appellant on the side of the head to no avail. While he was biting Officer Alexander, Appellant made eye contact with him and began shaking his head back and forth. Officer Alexander then forced his arm underneath Appellant where he

3

"could get a shot at his chin" and punched him another five to ten times. Officer Alexander believed that he momentarily knocked Appellant unconscious because Appellant finally released his bite after thirty to forty-five seconds.

At trial, Appellant asserted the defense of necessity and claimed that he bit Officer Alexander because he could not breathe. Appellant testified that he was trying to put his left hand behind his back but could not because it was stuck under the weight of his body. Appellant admitted, however, that his manic state affected his memory. He could not remember the order of the events that night, nor could he remember several statements that he made on the way to the hospital. Appellant's mother, father, and fiancée testified that Appellant complied with the officer's commands to put down the knife and sit on the couch, and they said that the altercation began when Appellant told his brother not to worry because these officers were not U.S. Marshals. They testified that Officer Lee pushed Appellant facedown onto the sofa, that one of the officers put his knee on Appellant's back, and that Office Alexander put one arm around Appellant's neck and hit Appellant in the head while Appellant yelled that he was in pain and could not breathe. But none of them saw Appellant bite Officer Alexander. None of them heard Officer Alexander yell out in pain, nor did they hear him say, during the struggle, that Appellant had bitten him.

In his first issue, Appellant challenges the sufficiency of the evidence. We review the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Under the *Jackson* standard, we examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App.

4

2010). As the sole judge of the credibility of the witnesses, the jury is free to accept or reject any or all of a witness's testimony, and we defer to the jury to resolve conflicts in the evidence, to weigh the evidence, and to draw reasonable inferences to reach ultimate facts. *Gross v. State*, 380 S.W.3d 181, 185 (Tex. Crim. App. 2012); *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991).

A person commits the offense of assault on a public servant if he intentionally, knowingly, or recklessly causes bodily injury to a person the actor knows is a public servant while the public servant is lawfully discharging an official duty. TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(1) (West Supp. 2014). Knowledge that the assaulted person was a public servant is presumed if the person was wearing a distinctive uniform or badge that indicated the person's employment as a public servant. *Id.* § 22.01(d). Necessity is a defense to prosecution for conduct that would otherwise be criminal. *Young v. State*, 991 S.W.2d 835, 838 (Tex. Crim. App. 1999). To establish necessity, the accused must produce evidence of a reasonable belief that the criminal act was immediately necessary to avoid a greater, imminent harm. PENAL § 9.22 (West 2011); *see also Mays v. State*, 318 S.W.3d 368, 385 (Tex. Crim. App. 2010). A "reasonable belief" is one that would be held by an ordinary and prudent person under the same circumstances. PENAL § 1.07(a)(42). "[I]mminent" means "impending, not pending; something that is on the point of happening, not about to happen." *Jackson v. State*, 50 S.W.3d 579, 595 (Tex. App.—Fort Worth 2001, pet. ref'd). Harm is imminent when there is an emergency situation and there is no time to consider whether the conduct is illegal. *Id.*

When we assess the evidence that supports the defense of necessity, we consider the facts that existed at the time of the criminal act and consider the circumstances from the viewpoint of the accused. *Wood v. State*, 271 S.W.3d 329, 334 (Tex. App.—San Antonio 2008, pet. ref'd); *see also Fitzgerald v. State*, 782

S.W.2d 876, 885 (Tex. Crim. App. 1990). A defendant who asserts a necessity defense has the burden to produce some evidence to support his claim. *See* PENAL § 2.03(c). Once the defense is raised, the State bears the ultimate burden of persuasion to disprove the raised defense. *See id.* § 2.03(d); *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003).

Appellant challenges "the lack of evidence presented by the State to overcome his necessity defense" and argues that "[t]he State offered no evidence that would negate the reasonableness of [Appellant's] belief that he was in imminent danger." The State argues that it "met its burden of persuasion and a rational trier of fact could reject appellant's necessity defense beyond a reasonable doubt."

Contrary to Appellant's assertion, the State has the burden of persuasion, not production. The State's burden does not require it to offer evidence to disprove the claim of necessity or to disprove the evidence offered to support the defense; it simply requires the State to prove its case beyond a reasonable doubt. *See Zuliani*, 97 S.W.3d at 594; *Saxton*, 804 S.W.2d at 913–14. When we review a sufficiency challenge that involves a defense, we must view the evidence in the light most favorable to the verdict to determine whether any rational jury could have found the elements of the offense beyond a reasonable doubt and whether it could have found against the appellant on the defensive issue beyond a reasonable doubt. *Saxton*, 804 S.W.2d at 914 (citing PENAL § 2.03(d); *Jackson*, 443 U.S. 307; *Butler v. State*, 769 S.W.2d 234 (Tex. Crim. App. 1989)).

In support of his necessity defense, Appellant testified that he could not breathe and was scared for his life. During closing argument, the State pointed to undisputed evidence that Appellant was yelling throughout the scuffle and argued that "either he was being choked or he could scream" but that "it cannot be both." Therefore, the central issue before the jury was whether Appellant reasonably

6

believed that biting Officer Alexander was immediately necessary to avoid imminent danger of death or asphyxiation. On appeal, the State argues that the jury could have rejected Appellant's claim because the evidence does not support his assertion that he could not breathe.

Viewing the evidence in the light most favorable to the verdict, the record shows that Appellant had refused to comply with the uniformed officers' request that he put his hands behind his back and that he further resisted their attempts to physically force him to comply. When Appellant reached for a knife during the struggle, Officer Alexander employed pepper spray. Although Appellant and other defense witnesses testified that Officer Alexander choked Appellant and hit him in the head, Officer Alexander said that he put his arm underneath Appellant's armpit, not around Appellant's neck, and that he only hit Appellant in the head after being bitten. Although Appellant testified that he was afraid he would die from not being able to breathe, Officer Alexander said that Appellant continued biting him for thirty to forty-five seconds and that Appellant made eye contact with him during this time and shook his head back and forth while biting down on Officer Alexander's forearm. It was undisputed that Appellant was yelling the entire time, and the State argued that Appellant would not have been able to yell throughout the struggle if he could not breathe.

We must conclude from our review of the record that there is sufficient evidence from which the jury could have determined beyond a reasonable doubt that Appellant assaulted Officer Alexander and could have rejected Appellant's necessity defense. *See Saxton*, 804 S.W.2d at 914. The jury could have rejected Appellant's claim that he believed that biting Officer Alexander was immediately necessary to prevent death or asphyxiation, or it could have determined beyond a reasonable doubt that his belief was unreasonable. *See Granger v. State*, 3 S.W.3d

36, 39 (Tex. Crim. App. 1999) (holding reasonableness of the defendant's belief was an issue for the jury to decide). Appellant's first issue is overruled.

In his second issue, Appellant challenges the admissibility of rebuttal evidence. We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). There is no abuse of discretion as long as the trial court's ruling is within the zone of reasonable disagreement. *Id.* We will uphold the trial court's ruling if it is correct under any theory of law applicable to the case. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).

On rebuttal, the State may present any evidence that tends to refute a defensive theory of the accused and the evidence introduced in support of that theory. *Laws v. State*, 549 S.W.2d 738, 741 (Tex. Crim. App. 1977). Appellant argues that it was error to admit the testimony of two rebuttal witnesses because the witnesses "did not rebut any defensive theory he propounded." According to Appellant, the "thrust" of his defense was that biting Officer Alexander was reasonable because he feared "that he was choking and could not breathe"; thus, proper rebuttal witnesses would have "addressed the reasonableness of [Appellant's] belief of imminent harm or whether his actions were immediately necessary to avoid such harm."

A defensive theory includes defenses that would justify or excuse the conduct constituting the offense, but an accused may also offer evidence that negates an element of the offense. *See Walters v. State*, 247 S.W.3d 204, 209–10 (Tex. Crim. App. 2007). To prove that Appellant committed the offense of assault on a public servant, the State had to establish that Officer Alexander was "lawfully discharging an official duty" at the time of the assault. *See* PENAL § 22.01(b)(1). Lawful discharge "means that the public servant is not criminally or tortiously abusing his office as a public servant." *Hall v. State*, 158 S.W.3d 470, 475 (Tex.

8

Crim. App. 2005). Examples of such abuse include acts of "official oppression" or "the use of unlawful, unjustified force." *Id.* (citing PENAL § 39.03 ("Official Oppression")).

Appellant and other defense witnesses testified that there was no justification for Officer Alexander's use of force. They testified that Appellant complied with the officers' orders and took no action that would permit the use of force, and they also implied that an officer who had been trained to handle mental health issues would not have used force.

Officer Lee testified that Appellant initially complied with his verbal requests to lie on his stomach and put his hands behind his back but then refused to put his left hand behind his back. Officer Alexander told the jury that he intervened because he saw Appellant struggling with Officer Lee, that he used pepper spray because Appellant reached for a weapon, and that he punched Appellant in the head because Appellant bit him and would not release his bite. The witnesses for the defense, however, claimed that Appellant complied with both officers' commands and that Officer Alexander straddled Appellant and began choking and punching his head while Appellant yelled out in pain. Thus, to assess the reasonableness of Officer Alexander's actions, the jury had to determine whether Appellant's actions justified the use of force.

Appellant also testified that, during similar mental health checks, deputies had simply asked him "a variety of questions" and that he went to the hospital willingly on those occasions. Briseno testified that she told the officers that Appellant was "the one that needs medical help and that he needs to get evaluated and to be admitted to a hospital" and to "please stop, he needs help, you're hurting him, you're not supposed to do this." During the struggle, Appellant's brother questioned why the police had been called, and Appellant's mother said that "this is not what I wanted to see, this is not the reason we had called them. We just

9

wanted their help so that he could receive attention, medical attention, at the hospital." By testifying about previous mental health checks and how they believed the officers should have responded, the witnesses implied that use of force is not justified in relation to a mental health check.

Evidence that Officer Alexander used unjustified force put the lawfulness of his actions in dispute, and the State was entitled to present evidence to refute this. *See Laws*, 549 S.W.2d 741; *see also Stiles v. State*, 239 S.W. 963, 964 (Tex. Crim. App. 1921) ("It is well settled in this state that, when any fact material to the issue is introduced by one side, the other has a right to deny, contradict, or explain such testimony, showing its falsity or breaking its force and effect in any legitimate way.").

Whether Officer Alexander's actions were reasonable was an issue for the jury to decide. *See Granger*, 3 S.W.3d at 39. The jury was instructed that it is a police officer's official duty "to make detentions and arrests and to conduct searches. In making a detention or arrest, all reasonable means are permitted to be used to effect it. No greater force, however, shall be resorted to than is necessary to secure the detention or arrest of the accused." If a qualified expert witness has specialized knowledge that will assist the jury in its determination of a fact in issue, the witness may offer an opinion or other testimony to aid the jury in that determination. TEX. R. EVID. 702.

To establish that Officer Alexander used no greater force than was necessary, the State called Officer Alexander's supervisor at the time of the altercation, Lieutenant Seth Herman, to testify about the various levels of force and when each is justified. Lieutenant Herman explained that the reasonableness of an officer's use of force depends on the level of resistance provided by the suspect. If a "suspect" fails to respond to verbal commands, the officer may be justified in using physical contact. If physical contact does not coax compliance, an officer

can use various "pain compliance" techniques, including pressure-point control tactics; disabling motor function; and the use of pepper spray, police batons, or even deadly force.

The State also called Deputy Michael Naylor, a certified peace officer and one of three certified mental health deputies in the Midland County Sheriff's Office, to testify about mental health checks generally. For his certification, Deputy Naylor completed a forty-hour training program. According to Deputy Naylor, force is sometimes necessary and warranted when responding to a call for a mental health check, and the reasonableness of the officer's response depends on the specific circumstances of each case. When asked a hypothetical question based on the facts of this case, Deputy Naylor explained that the proper response would depend on how and whether the person is using the knife and whether he poses a threat.

Appellant disputed the lawfulness of Officer Alexander's conduct in using force, and the testimony of Deputy Naylor and Lieutenant Herman was offered to aid the jury in determining the circumstances under which force is justified. Accordingly, we cannot conclude that the trial court abused its discretion when it admitted the testimony of Deputy Naylor and Lieutenant Herman. Appellant's second issue is overruled.

The judgment in this case reflects that the jury convicted Appellant of an offense under Section 22.02(b)(1) of the Texas Pendal Code. We modify the judgment of the trial court to show that Appellant was guilty under Section 22.01(b)(1).

11

We modify the judgment to reflect the correct section of the Penal Code under which the jury convicted Appellant, and as modified, we affirm the judgment of the trial court.


JIM R. WRIGHT

CHIEF JUSTICE


September 30, 2014

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

12